[No. C. D. 2886. *En Banc.* December 16, 1944.]

*In the Matter of the Discipline or Disbarment of* WALTER METZENBAUM, *an Attorney at Law.*[1]

*Walter Metzenbaum, pro se.*

*S. H. Kelleran,* for board of governors.

STEINERT, J.—The board of governors of the Washington state bar association instituted this proceeding for the dis-

[1]Reported in 154 P. (2d) 602.

ciplining or disbarment of the respondent, Walter Metzenbaum, an attorney at law.

Respondent was admitted to the practice of law in the state of Washington in the year 1907, and for the greater part of the time since then until the latter part of 1942 he has practiced his profession in this state; at other times and for relatively brief periods he has practiced the same profession in other states.

The board of governors issued its complaint against the respondent in December, 1942, charging him with violation of his oath of office and violation of the ethics of the profession in that, on three separate, specific occasions during the year 1942, and while residing in this state, he had personally and through the agency of others solicited the employment of himself as attorney for certain individuals in prospective personal injury actions to be brought by such persons. At the time the complaint was served on the respondent, however, he was residing, and has ever since resided, in the state of California and has not during that period practiced law in this state.

In due time, respondent filed his answer, denying the charges made against him and alleging affirmatively certain facts in explanation of one of the charges contained in the complaint. Subsequently, the board of governors filed a supplemental complaint charging respondent with another act of solicitation, alleged to have likewise been committed in this state in the year 1942. It appears, however, that the supplemental complaint was never served on the respondent nor was it ever answered by him.

The cause was later set down to be tried by a local trial committee on April 30, 1943, in accordance with the practice obtaining in this state in such cases. At respondent's request, the trial committee granted three successive continuances of the matter, once because of respondent's financial inability to come to Seattle from Bakersfield, California, where he was then residing; a second time because one of his sons, who was in the armed service of the United States, was expected home on a furlough at about that time; and a third time because of respondent's weakened physical con-

dition due to a duodenal ulcer from which he was then suffering. In connection with the last continuance, a physician, who was a member of the staff of the University of California hospital, in the city of San Francisco where respondent was then living, certified on October 1, 1943, that respondent had previously sustained two hemorrhages of the duodenal ulcer and had been under the physician's care ever since, and that respondent's condition was such that the projected trip to Seattle would be inimical to his health. On the strength of that certificate, the trial committee granted the third request, continuing the case to December 14, 1943, but at the same time notified respondent that no further continuances would be permitted.

On November 29, 1943, respondent applied for another continuance and in support of his application submitted a second certificate from the same physician, stating that, while respondent had made progress under the physician's treatment, his condition was still such that any lengthy travel, followed by the strain of a legal contest of the nature involved in the pending cause, would likely prove dangerous to respondent's health, and that for that reason he, the physician, had advised respondent not to make the trip to Seattle.

The members of the committee and their attorney had some conference and correspondence with each other in regard to the requested continuance, but the committee ultimately concluded to deny respondent's request. The record does not disclose any expressed reason for that decision, nor is there anything in the record controverting the statement of either the respondent or his physician with reference to respondent's physical condition at that time. Respondent complained bitterly of the action taken by the trial committee and stated that he would not jeopardize his life by coming to Seattle at that time, in the face of his doctor's orders, even though by not coming he might run the risk of being disbarred from the practice of law in this state.

The cause then came on for trial on December 14, 1943, the day set therefor. Although the respondent had not re-

quested that an attorney be appointed to represent him at the trial, the committee, after some discussion of the matter at the commencement of the hearing, concluded to, and did, appoint a local attorney for that purpose. The attorney knew nothing about the case, however, and entered upon the trial without any opportunity for preparation. Although he seems to have done everything he could for the respondent under the circumstances, the fact remains that because of his lack of knowledge concerning the case he actually rendered little or no assistance to the respondent.

The trial proceeded, not only on the original complaint, but also on the supplemental complaint which had not been served on the respondent. About six months after the hearing, the trial committee made its written findings, which were largely a repetition of the allegations in the complaint, and from those findings concluded that respondent had solicited employment of himself as attorney for various persons and had violated his oath of office and his duties as an attorney. Basing its action on these findings and conclusions, the trial committee recommended that the respondent be permanently disbarred.

Upon a subsequent review of those proceedings, and after respondent had filed a statement in opposition to the report of the trial committee, the board of governors approved and adopted the findings of the committee and then likewise recommended that respondent be disbarred from further practice of law in the state of Washington. The evidence, findings, and recommendations of the board of governors were then transmitted to, and filed in, the office of the clerk of this court. Respondent thereupon filed in the same office his objections to the action and recommendation of the board, and accompanied his objections with a typewritten brief. The cause was then duly assigned for hearing by this court on the whole record as brought before it.

In the objections and brief submitted by the respondent, he makes three contentions: (1) that the proceedings before the trial committee should not be considered at all

in this court, or at least that the entire matter should be sent back to the committee for trial anew, for the reason that the respondent, on account of his serious illness, was prevented from attending the hearing and properly defending himself; (2) that the entire proceeding before the trial committee should be held null and void for the further reason that the committee, without the knowledge or consent of the respondent, and without any authority in law, assumed the prerogative of appointing an attorney to represent him throughout the trial; and (3) that the evidence in the case is wholly insufficient to support the findings and recommendations of either the trial committee or the board of governors.

It is now universally recognized that the right to practice law, once acquired, is a valuable right, and that an attorney cannot be deprived of that right except by the judgment of a court of competent jurisdiction, after notice and full opportunity to be heard in his own defense.

In 2 Thornton, Attorneys at Law, 1301, § 882, it is said:

"An attorney can be deprived of the right to practice his profession only upon a judicial hearing on charges legally presented, and in which he is given a full and fair opportunity to be heard in his own defense."

In 5 Am. Jur. 435, Attorneys at Law, § 289, the decisions of the courts are epitomized in the following statement:

"Except where the matters constituting the ground of its action occur in open court in the presence of its judges, the power of the court to disbar or suspend an attorney should not be exercised without notice to the offending party of the grounds of complaint against him and without a hearing affording him ample opportunity of explanation and defense."

In 7 C. J. S. 768, Attorney and Client, § 27, occurs this statement of the law:

"The general rule is that before an attorney may be removed from his office by a court, whether under a statute or in the exercise of its inherent powers, he is entitled to notice and opportunity to be heard in defense."

All courts in this country proceed upon the principles

expressed in the foregoing quotations, and we do not think that any contention is ever made to the contrary.

The procedure in this state for the discipline, disbarment, suspension, and reinstatement of attorneys is prescribed by "Rules For Discipline of Attorneys," adopted in pursuance of chapter 94, Laws of 1933, and appearing in volume 193 Washington reports. Rule XII, p. 93-a, provides that "the accused attorney shall have opportunity to make his defense."

■ Applying the foregoing principles and rules to the facts shown by the record in this case, we do not believe that the respondent has been given that full opportunity to be heard in his own defense which the spirit of the law in such cases contemplates. It is true that, in the early stages of the case, the trial committee was quite lenient with the respondent in the matter of postponements and in fact granted two of the three continuances upon grounds which it was not compelled to recognize as being conclusive, but which, in the desire to be eminently fair, it did recognize and accept as being satisfactory. That fact, however, will not afford sufficient reason for refusing a further continuance when good cause is shown therefor.

It appears from the record in this case that during the period here in question respondent was afflicted with a serious case of duodenal ulcer, which had hemorrhaged two or three times, and that another hemorrhage might have easily occurred, with more serious results, if the respondent had then been subjected to the hardship of extended travel and the worry and strain of a proceeding of this nature. A seemingly reputable physician had certified to respondent's condition, and there is nothing in the record to dispute his diagnosis or the propriety of his professional advice. It will be noted that at that time respondent was neither residing, nor practicing his profession, in the state of Washington. It is also manifest that the offenses with which he is charged, although sufficient in law, if established, to merit disbarment, are neither felonies nor misdemeanors involving moral turpitude, although, under Rem. Rev. Stat., § 2370, they do constitute misdemeanors, and,

besides, are violations of certain canons of ethics pertaining to the practice of law. Furthermore, there was no impending emergency which required trial and disposition of the matter on that particular day. As stated above, the trial committee did not make its written findings in the case until about six months after the date of the trial.

It may be that the respondent is guilty of the charges preferred against him and that he should be disbarred from further practice of law in this state; but it is of equal gravity and concern that he should not be deprived of his rights by a court of law without giving him full opportunity to present his defense. In view of the serious consequences to an attorney resulting from a judgment of disbarment, with its attendant degradation and probable effect upon his means of livelihood, whether he be living in this state or elsewhere, we are of the belief that he should be afforded fair opportunity not only to hear the testimony given against him by witnesses, but also to produce other witnesses and to be heard in his own defense. For these reasons, we think that in this instance the trial should have been continued on December 14, 1943, to some later date. It appears from respondent's own statement in his brief that he is now sufficiently recovered to attend and stand trial.

■ As stated above, respondent's second contention is that the entire proceeding before the trial committee should be held null and void, because of the action of the committee in appointing an attorney to represent him at the trial without the latter's knowledge or consent and without any authority in law. We do not agree with this contention. While respondent did not request such an appointment, the trial committee evidently thought that it was but fair to him that, in his absence, some member of the bar should be designated to protect his interests and see that the trial was conducted fairly and impartially, in accordance with the rules applicable to such matters. We think the trial committee had authority to appoint an attorney to represent the respondent, even though respondent had not requested the appointment. The record does not disclose

that respondent was in any way prejudiced by the fact of the appointment of the attorney or by anything that the attorney himself actually did at the trial.

However, the circumstances connected with the appointment of the attorney serve to emphasize the grounds of our decision upon respondent's first contention stated above. It will be remembered that the attorney was selected and called in on December 14, 1943, after the hearing had actually begun. The attorney knew nothing about the facts in the case, had no way of communicating with the respondent at the time, and was in no position to obtain other witnesses who might have testified in respondent's behalf. The point we here make is that, if the trial committee considered the situation serious enough to call for the appointment of an attorney to look after and protect the respondent's interests, it should have continued the case long enough to enable the attorney to get in touch with the respondent and inform himself of the facts from the standpoint of the respondent himself.

Respondent's final contention is that the evidence adduced before the trial committee is insufficient to support the findings of either the committee or the board of governors. In our opinion, the evidence as it stood at the conclusion of the hearing was of itself sufficient to support the findings and, in the absence of evidence to the contrary, would warrant the recommendation made by the committee and by the board. The proceeding should therefore not be summarily dismissed.

For the reasons hereinbefore stated, the cause will be remanded to the board of governors with direction to that tribunal to refer the matter to the local trial committee for a new trial in accordance with the rules in such cases, upon the complaint and also upon the supplemental complaint, provided that the latter pleading shall have been duly served upon the respondent.

SIMPSON, C. J., BEALS, MILLARD, BLAKE, ROBINSON, MALLERY, and GRADY, JJ., concur.