## CHARLES JORDAN AGT. DERRICK UPDEGRAFF.

*Chancery : Jurisdiction : Settler : Pre-emption : Action : Evidence : Damages.*

1. A court of chancery will not entertain jurisdiction of a case to exert its equitable powers of relief, when the complainant can have adequate remedy by an action at law.

2. A party in possession of lands under the laws of the United States, with the status of a *bona fide* settler, and the right to pre-empt, has rights which the law will protect, and, for the violation of which, he is entitled to redress in an action at law.

3. The government price of land is no criterion by which to ascertain the damages, in a proceeding to assess damages, by reason of an injunction granted to restrain the cutting of timber on such land.

APPEAL from the District Court of the Third Judicial District.

*By the Court*—WILLIAMS, J.

On the 12th day of June, 1856, Charles Jordan filed his bill of complaint in the district court, praying for an injunction to enjoin and restrain Derrick Updegraff, his counselors, attorneys, etc., from cutting, and in any way disposing of timber or trees

growing upon, or in any wise appertaining to a certain claim or tract of land in the county of Shawnee, and territory of Kansas, containing about eight acres. The complainant sets forth in his bill, by averment, all the allegations of fact made requisite by the pre-emption laws, to enable him to pre-empt government land under the act of 1841. That on the twenty-second day of November, 1854, he was in possession and occupancy of the land in dispute. That immediately after taking possession of the land, he plowed and fenced some five or six acres of the land, erected thereon a dwelling house, and made other improvements. That at the time he took possession of the same, it was vacant and unoccupied, being public lands of the United States, and unsurveyed. That afterwards, on or about the 23d day of January, 1856, the land was surveyed by the deputy surveyor of the United States, when it was ascertained that land in controversy was the west half of the north-east quarter of section (35) thirty-five, in township eleven (11) south, range sixteen (16) east of the sixth (6) principal meridian, in the district of lands subject to sale, at the land office at Lecomptom, in the territory of Kansas. That he resided on the land with his family, and, by virtue of his possession and occupancy of the land, he claims the right of pre-emption thereto under the provisions of the act of congress. This settlement thereon being *bona fide* for his own benefit and use, and not for purposes of speculation. That he had not made any contract for the sale of the title to the land which he might obtain from the government. He

then avers the priority of his possession and occupancy of the land.

He then proceeds and charges that, notwithstanding all these facts of his claim to the land, the respondent, Updegraff, on the 24th day of December, 1855, and other times subsequent thereto, entered upon the premises, and the pre-emption right of complainant so as above described, and cut and destroyed trees, timber, etc., growing thereon, and committed waste upon, and did damage to the premises, and from day to day still continued to cut down and destroy the trees, timber, etc., growing thereon, as aforesaid, and that the said Updegraff had hauled away, and continued to haul away, large quantities of trees, timber, logs, etc., from said lands, and applied the same, or the proceeds thereof, to his own use and benefit, to the great injury of the complainant. The bill then charges that Updegraff, confederating and contriving with other persons in these acts, is endeavoring, by fraudulent collusion, to prevent complainant from procuring the pre-emption right and title to the land. That the acts complained of in the bill, are in violation of his rights, and against equity, and that being without adequate remedy at law, he prays for relief in chancery, and that an injunction may issue. The injunction, as prayed for, was granted, issued and served.

The respondent, Updegraff, appeared, and at the November term of the court, 1856, filed his answer to the complainant's bill. The answer denies fully every material allegation contained in complainant's bill, so far as the right of possession, occupancy and

improvements made upon the land in controversy is concerned. The answer, in direct terms, denies that complainant entered upon, took possession of, and made improvements on the land, at the time and in the manner set forth in his bill, and also denies that the land was, at the time of such entry, as is alleged in the bill, unoccupied and vacant. That, although it is true that complainant did enter upon the land, and built a dwelling house, and dwelt therein with his family, etc., as alleged in his bill, yet previous to the time of such entry, possession, occupancy and improvement, he, the said Updegraff, had entered upon said land, was in possession thereof, had built a good dwelling house thereon, and improved the same, with a view to procure the right and title thereto under the pre-emption laws of the United States, to which he was entitled in all respects. That the possession and occupancy and improvement of the respondent was more than one year prior to that of the complainant, and the complainant was a trespasser, acting in violation of the rights of the respondent, who claimed by virtue of law. The answer is verified by the oath of the respondent, Updegraff, in due form.

At the December term, 1856, a motion was filed by respondent's attorney to dissolve the injunction, and afterwards was withdrawn. Thereupon the replication of complainant was filed. The record of the court's proceeding then shows that "both parties being ready, this cause came on to trial. Whereupon the court, after hearing the *evidence* and the argument of counsel, ordered that said cause be continued until

to-morrow." On the next day, accordingly, the record of the proceedings of the case is as follows : " Now, this day again comes the parties by their attorneys, and this cause being heard on the pleadings and *proofs* and arguments of counsel, it is hereby ordered, adjudged and decreed, that the complainant's injunction be, and the same is hereby dissolved ; and it is further hereby ordered, adjudged and decreed that the cause is hereby retained in court, that the defendant may make proof of the damages, if any he has sustained, by reason of said injunction."

After due notice, the parties again appeared for hearing before the court, on the subject of the damages, if any, sustained by the respondent by reason of the suing out of the writ of injunction. This hearing was had on the 23d day of December, 1856. The evidence as to the damages having been adduced, and the parties by their attorneys heard, the question, by consent, was submitted to the judge, without the intervention of a jury, for adjudication. Whereupon, the damages, which the respondent had sustained by the proceedings under the complainant's injunction, were assessed by the court at the sum of six hundred dollars ; a decree was thereupon made and entered against Jordan, the complainant, and his sureties for that sum, together with the costs of the proceedings. An appeal was then taken by the complainant to this court. This being the statement of the case as certified of record here, we will, as briefly as possible, proceed to a decision of the points involved.

In the first place, we think it apparent, from the

matter of complaint presented by the complainant's
bill, that he mistook his remedy, by seeking redress
for the wrongs complained of in a court of chancery.
The principle in jurisprudence, " That a court of
chancery will not entertain jurisdiction of a case to
exert its equitable powers of relief, when the com-
plainant can have an adequate remedy by an action
at law," is too well established to admit of a doubt.
The facts of complainant, as set forth in this bill, pre-
sent a case properly cognizable in a court of law,
upon a proper procedure at law.   By establishing the
facts contained in the bill, the complainant had ample
means of redress under the statutes of the territory,
although his claim, as set forth in his bill, is only pos-
sessory, being an occupant of public lands of the gov-
ernment, upon which he claims to have made improve-
ments with a view to pre-emption.   His possession,
actual occupancy and improvement of the land, as the
first *bona fide* settler, would be protected and main-
tained, by the laws of this territory, against any one
who might trespass upon his claim, thus *bona fide* made
and held by him.   He might have brought his action
of trespass, or forcible entry and detention for the
wrongs complained of, and thereby obtained ample
redress.   An original bill in chancery, in such a case
as this, is not the proper remedy.   The remedy is
provided by the statutes in express and plain terms.
Besides, as the record of the case certified to this
court, from the court below, it appears that all the
material allegations of the complainant's bill, are di-
rectly and fully denied by the answer of the re-

spondent, so as to make up a complete defense to the action; and the answer being verified by the oath of the respondent, it was incumbent upon the complainant to disprove it, so as to sustain the issue on his part, by the evidence of disinterested witnesses, or other proper testimony. This he has failed to do. There is no testimony, whatever, returned with the record of the case, although the record sets forth that the case was decided by the court below upon the pleadings and *proof*. The case, as to the manner of proceeding upon the bill, is here simply upon the bill, answer and replication, without any evidence whatever. Such being the record of the case, it can only be considered for adjudication by this court upon the pleadings, the answer of the respondent being a full denial of the facts of the bill, which constitutes the gravamen of the action, under oath, is without contradiction by evidence otherwise sufficient as a defense to the suit. Therefore, as the case is presented here, the judgment of the district court, dismissing the bill, was correct. As to the decree of the court on the subject of the damages sustained by the respondent, by reason of the suing out of the injunction, and the proceedings thereon, we are unable to discover any good ground upon which to act, in order to interfere with the decision of the court below.

The chief objection to the assessment, as made and urged here, is, that the sum allowed by the court, is excessive and unreasonable. The record shows that after the assessment had been made, the term of the court ended, without any entry being made of record,

that the complainant had appealed from the assessment
during that term, in accordance with the requirement
of the statute.    That at the term of the court next
succeeding, he appeared by his counsel, and upon an
allegation then made, that he had moved, orally, for a
new trial and appeal immediately upon the making of
the decree of assessment.    The judge, having some
recollection of a motion to that effect being made in
court at that time, allowed the motion to be made *nunc
pro tunc*, and thus the party was again heard upon the
subject of the damages upon a motion for a new trial.
The court refused to grant it, and the decree was made
final upon the assessment.    We have alluded to the fea-
tures of the case only to say that although an objection
to this manner of proceeding might not prove fatal to
the appeal in this case, yet, in view of the position and
wholesome requirement of the statute on this subject,
if the motion be made orally, or indifferently, there
being no motion on file with the case, and no entry of
the motion appears of record to afford evidence of the
fact, it should not be allowable to make a record of
the memory of the judge, or any other person, as to
matters of court procedure, particularly when the
statute has prescribed the rule, and the well-estab-
lished practice of the court has settled the mode.  The
acts affecting the rights of the other party, as to no-
tice of the condition of his case, should be mani-
fest on file, or of record in the proper manner and
place, otherwise surprise to his prejudice might be the
result.   The judge has quite sufficient responsibility
resting upon him without being made a record of ac-

tion had in matters which transpire on trial from term to term.

The evidence on the subject of the assessment of damages is here of record. From this it appears that the amount decreed by the court is some two hundred dollars less than that established by the evidence, for the reason, as the court properly decided, that the assessment could not exceed the sum fixed as a penalty in the injunction found.

It is urged here that land being of the public domain of the United States, was worth only one dollar and twenty-five cents per acre, and damages over and above the value of the land must be considered excessive—that it is apparent that the damages awarded are speculative, which is not allowable at law. To this proposition the evidence of the case on this subject furnishes a plain and conclusive answer. The land is shown to be timbered land, upon it the respondent had erected his dwelling house, and a sawmill, with other improvements, being the first settler and occupant thereof, and that he was, during the pendency of the injunction, restrained from the privileges and right of using the timber for the purposes of his mill and otherwise. This was considered by the court in the assessment.

In this we find no error. Decisions on this point are uniform.

The respondent, as this case stands, was shown to be in possession of the land under the laws of the government, with the status of a *bona fide* settler, with the right to pre-empt the land. Being so, he had

rights by possession, occupancy and improvement, which the law would protect, and for the violation of which, he was entitled to redress. If this were not the case, any man, in similar condition on the public land, would be liable to hindrances, and might be prevented by another from securing the benefit of the pre-emption laws, and the design of such legal enactments be entirely thwarted. The government price of land is no criterion by which to ascertain the damages in a case of this kind.

The legal relation existing between a settler who is in the possession of the proper quantum of the public lands, in progress of pre-emption, and the government of the United States is, by virtue of law, for his benefit. In the exercise of this legal privilege, while he is amenable to the government under the law, he will be protected in his legal and equitable rights, so that all the legitimate benefits arising therefrom may be secured to him.

We are unable to find any thing in the proceedings of this case, which would justify us in interfering with the decree of the district court.

ORDER.—The decree of the district court is affirmed.