No. 32,091

CLAUDE I. DEPEW et al., *Appellees*, v. THE WICHITA RETAIL CREDIT
ASSOCIATION, *Appellant*.

(42 P. 2d 214)

Opinion filed March 9, 1935.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson, Paul J. Wall, Carl I. Winsor* and *John E. Boyer,* all of Wichita, for the appellant.

*H. W. Hart, A. M. Cowan* and *George Siefkin,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action brought in the district court of Sedgwick county, Kansas, by eight duly licensed practicing attorneys at law of the city of Wichita, Kan., on behalf of themselves and all other practicing attorneys of the city of Wichita, to enjoin the Wichita Retail Credit Association, Inc., from the illegal practice of law.

The defendant filed a motion to strike out several allegations of the petition and also filed a demurrer to the petition, both of which were by the trial court overruled, from which rulings the defendant appeals, insisting—(1) that the trial court had no jurisdiction of the person of the defendant nor the subject matter of the action, (2) that the plaintiffs had no legal capacity to sue, (3) that several causes of action were improperly joined, and (4) that the petition did not state facts sufficient to constitute a cause of action

against the defendant. The errors upon which the appellant relies most strongly concern the overruling of the demurrer to the petition, in the review of which we shall of course consider the allegations of the petition as being true.

There are two questions seriously involved: (1) Is injunction a proper remedy to prevent a corporation from engaging in the unlawful practice of law; and (2) Are individual attorneys, suing on behalf of themselves and all other practicing attorneys of the city of Wichita, proper parties plaintiff in an action to enjoin a corporation from engaging in the unlawful practice of law?

Appellant cites many Kansas decisions to the effect that courts of equity will not entertain jurisdiction of cases where there is an adequate remedy by an action at law, as it claims there is here by an action in quo warranto, quoting from the decision in the case of *Jordan v. Updegraff*, McCahon, 103, the following on page 108:

"The principle in jurisprudence, 'That a court of chancery will not entertain jurisdiction of a case, to exert *its* equitable powers of relief, when the complainant can have an adequate remedy by an action at law,' is too well established to admit of a doubt."

Also quoting the first syllabus of *Neeland v. The State, ex rel.*, 39 Kan. 154, 18 Pac. 165—

"Injunction is not the proper remedy to determine the title of an office, but *quo warranto* is." (See, also, *Treat v. Wilson*, 4 Kan. App. 586, 46 Pac. 322.)

Appellant also cites *Telephone Co. v. Telephone Association*, 94 Kan. 159, 146 Pac. 324, which relates not only to the question of the remedy by injunction but also to the right of a licensed telephone company to exclude from its competition another telephone company which does not possess a license, and it was held that the plaintiff was not entitled to an injunction. It is proper and best to consider in connection with this decision another and more recent case cited by appellees, viz., *Wichita Transportation Co. v. Peoples Taxicab Co.*, 140 Kan. 40, 34 P. 2d 550, where a street-car company was held to come under the exception noted in the Telephone company case and be entitled to an injunction to avoid what might eventually lead to bankruptcy of the plaintiff. The exception, noted on page 163 of the opinion in the Telephone case, is as follows:

"A private plaintiff who is likely to be injured in some special manner or whose situation is peculiarly affected by the exercise of a usurped power could maintain the action, but no such case is presented here."

Both these cases have to do with the question of parties plaintiff as well as the remedy.

Both parties refer to the case of *State, ex rel., v. Perkins,* 138 Kan. 899, 28 P. 2d 765, which is all important here because it involved the authority of the party defendant to practice law in this state. It was an original action in quo warranto, brought in the name of the state on relation of the attorney-general, but in discussing the different methods of bringing actions to question the right of defendants to practice law, including contempt, injunction and quo warranto, it was said in the opinion on page 906 that—

"The form in which the matter is called to the court's attention is not so important. Since the court has jurisdiction of the subject matter, any recognized procedure by which a charge or complaint is entertained, and the one charged is given proper notice, and in which there is a full hearing fairly conducted, would appear to be sufficient." .

Many of the cases cited by appellant from other jurisdictions are not fully applicable to the case at bar, because they hold injunction is not a proper remedy for the reason there is in those states an adequate remedy at law in that the unlawful practice is by statute made a misdemeanor. Similar laws exist in this state as to a number of professions, but not as to the practice of law.

In line with the exception stated in the Telephone case, and the decision in the recent Street-car case, it is interesting to note the very decided recent modification of the earlier exceedingly strict rule as to the use of injunction as an equitable remedy. In 32 C. J. 34 it is said:

"While it has been said that the writ of injunction will not be awarded in new and doubtful cases not coming within the well-established principles of equity, yet the absence of precedent, although not to be overlooked entirely, does not of itself determine questions of jurisdiction. It is not a fatal objection that the use of the writ for the particular purpose for which it is sought is novel. Courts may amplify remedies and apply rules and general principles for the advancement of substantial justice. If this was not so, and courts were confined to particular precedents, there would be no power to grant relief in new cases constantly occurring."

In the Law of Injunctions by Lewis & Spelling, pages 2 and 3, it is said:

"In numerous judicial opinions are to be found recognitions of the expansion which has been found necessary in the use of injunctive processes to keep step with the onward march of civilization and meet man's manifold needs. Mr. Justice Brewer, while sitting in the circuit court for Nebraska, in an unreported case, expressed a view which has been often quoted, that 'the

powers of a court of equity are as vast, and its processes and procedure as elastic, as all the changing emergencies of increasingly complex business relations and the protection of rights can command.' . . .

"That the remedy by injunction has become more common and therefore more prominent in modern or recent times is doubtless true, and this grows out of the ever changing conditions and evolutions in business incident to modern civilization. That the courts adapt themselves to these changing conditions and afford relief, thus preserving the rights of the individual citizen from combinations of the many, is a tribute to the conservatism and wisdom of both bench and bar."

It is also interesting to note in chapter 21 of our Revised Statutes, being that concerning crimes and punishments, how many provisions there have been enacted since the year 1900 authorizing the use of the remedy of injunction to prevent the commission of crimes, for which there are definite and specific punishments prescribed.

As to the legal capacity of the plaintiffs to sue and maintain this action, they allege in their petition that they are all residents of Wichita, Kan., and are duly licensed practicing attorneys at law by virtue of franchises granted to them by the supreme court of the state of Kansas and the United States courts, maintaining their offices at Wichita, Kan.; that they have been practicing law in said city for a number of years; that they and each of them have built up a valuable practice; that all of them are members of the Wichita Bar Association and comprise a committee appointed by said association to take action against illegal practice of law by persons not licensed practicing attorneys; that they maintain this action on behalf of themselves and all the practicing attorneys of Wichita, Kan.; that all of the acts alleged concerning the doings of the defendant are illegal, contrary to the rights of these plaintiffs and all other attorneys at law of Wichita and the public and the courts, and tend to bring the legal profession and administration of justice and law into bad repute, and that the plaintiffs and others similarly situated have no adequate remedy at law and will be irreparably damaged if an injunction is not issued against the defendant corporation.

Appellant cites many Kansas cases to the effect that when public rights are to be subserved a public officer must apply for the writ, and that before a private individual can make such an application he must show some particular right or privilege of his own independent of that which he holds with the public at large. (*Bobbett v. State*, 10 Kan. 9.) The following is cited from *Mining and Gas Co. v. Gas and Mining Co.*, 55 Kan. 173, 40 Pac. 326:

"A private person or corporation will not be recognized in a court of justice as the guardian of purely public interests, nor to further its private ends by assuming that character." (p. 179.)

Along the same line appellant also cites *Craft v. Jackson Co.*, 5 Kan. 518; *Ruthstrom v. Peterson*, 72 Kan. 679, 83 Pac. 825; and *Comm'rs of Barber County v. Smith*, 48 Kan. 331, 29 Pac. 565.

Our attention is directed by the appellant especially to the case of *Amusement Syndicate Company v. City of Topeka et al.*, 68 Kan. 801, 74 Pac. 606, where the Amusement Syndicate Company attempted to enjoin the city of Topeka and its officers from permitting the city building in which there was a large auditorium from being used for public entertainments for profit, and the injunction was denied, citing many of the cases herein above noted.

The Telephone case and the Street-car case are also cited in connection with the rights of the plaintiffs therein to maintain such actions.

We again refer to the Perkins case for a good definition of an attorney at law. It was there stated, and quoted with approval, that the authority, permit or license to act as an attorney at law is a privilege "in the nature of a franchise from the state conferred only for merit" and revocable on his violation of his obligations and duties.

Although one or two statements among the allegations of the petition might be construed as pleading a private or personal right and injury, yet in the main the plaintiffs' claim is for themselves, other members of their profession and the public generally for protection against the illegal practice of law in their city. It was held in *In re Casebier*, 129 Kan. 853, 284 Pac. 611, that—

"The right to practice law is a privilege conferred upon a specially qualified class of persons for the purpose of assisting the state and its tribunals to administer justice. It is neither property nor a property right." (p. 855.)

This ruling was followed and approved in *In re Hanson*, 134 Kan. 165, 5 P. 2d 1088.

It was also held in the Casebier case, *supra*, that "an attorney is an officer of the court, a quasi public official." And in the Perkins case along the same line it was stated in the opinion that—

"While an attorney at law is not a public officer in the sense that term is ordinarily used, he is nevertheless 'an officer of the court' (*In re Pryor*, 18 Kan. 72; *Hanson v. Grattan*, 84 Kan. 843, 115 Pac. 646)." (p. 903.)

So whether or not the interest of the plaintiffs in their professional

capacities is in the nature of a property right, they have under the allegations of their petition and these definitions a special privilege, franchise and duty as officers of the court to protect the legal profession, the courts and the administration of justice generally. And it would seem to be well within such special franchise and privilege to protect not only themselves and others of their profession, but the courts of which they are officers against the illegal and unprofessional conduct of others.

Many very strong and well-considered cases from other states are cited by appellees holding that a member of the legal profession or a bar association may maintain injunction proceedings against corporations to restrain them from the unlawful practice of law. Perhaps the latest was decided by the supreme court of Ohio on November 27, 1934, the seventh syllabus of which is as follows:

"The right to practice law conferred by the state is a special privilege in the nature of a franchise, and a possessor thereof may be protected by injunction from the invasion of the right thus vested in him." (*Land Title Abstract & Trust Co. v. Dworken; Guarantee Title & Trust Co. v. Same; Cuyahoga Abstract Title & Trust Co. v. Same* [Ohio], 193 N. E. 650.)

In each of these three cases Jack B. Dworken, a practicing lawyer, for himself and in behalf of all other attorneys at law commenced and maintained each of these three injunction cases against three different trust companies to restrain each of them from continuing in the unauthorized and unlawful practice of law. The six prior paragraphs of the syllabus defined and determined different items of business conducted by these trust companies as being within the business of practicing law, and the seventh paragraph, as above quoted, holds that a member of the bar was a proper plaintiff to maintain such an action. Another recent case reaching the same conclusion was maintained by a licensed practicing attorney and the bar association of New Jersey, viz., *Unger v. Landlords Management Corp.*, 114 N. J. Eq. 68. Many other cases reaching the same conclusion are cited in the opinions in these two cases last mentioned and are cited in the brief of appellees from the highest courts of Illinois, Minnesota, Washington and other states.

Another recent case is that of *State Bar v. Retail Credit Ass'n,* (Okla.) 37 P. 2d 954, decided by the supreme court of Oklahoma in November, 1934, but it differs in being maintained by the State Bar Association, a chartered corporation authorized by statute to sue and be sued.

Appellant insists that many of these cases are not applicable in this state because they directly or indirectly base their conclusion upon the theory and principle that a license to practice law is a property right, which is contrary to the holdings in Kansas as expressed in the Hanson, Casebier and Perkins cases, but it is held that such apparent difference in the reasoning and logic of the different theories will not make those decisions inapplicable to the questions involved in the case at bar nor prevent them from being reliable precedents.

In the original Hanson case, reported in 99 Kan. 23, 160 Pac. 1141, the opinion recites that the attorney-general of Kansas was directed by the supreme court to take proper steps by filing an accusation against the attorney in the contempt matter that had occurred in another case. It was based, as stated in the opinion in that case, on the ground that an attorney is an officer of the court and is under special obligations to the court and that it is his duty to uphold the honor and dignity of the court.

It is said in an opinion written by Judge Cardozo in the case of *People, ex rel. Karlin, v. Culkin,* 248 N. Y. 465, that—

" 'Membership in the bar is a privilege burdened with conditions' (*Matter of Rouss,* supra, p. 84). The appellant was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice. His coöperation with the court was due whenever justice would be imperiled if coöperation was withheld." (p. 470.)

Licensed privileges of attorneys and duties as court officers are so closely related and interwoven as to justify their maintaining an action to sustain the honor of the court and restrain the unlawful practice of law.

We conclude that injunction is a proper remedy to restrain a corporation from the unlawful practice of law, and that attorneys as officers of the court, suing on behalf of themselves and other practicing attorneys of their vicinity, are proper parties plaintiff in such an action to enjoin a corporation from the unlawful practice of law, and further that there was no error in the overruling of the demurrer to the petition by the trial court.

The judgment is affirmed.

HUTCHISON, J., dissenting.

BURCH, J. (concurring): I concur in the result, and treating the

case as an injunction action between Depew and others as plaintiffs against the credit association as defendant, the case is well decided. My view, however, is that in essence and substance this is not an action at all. Under the fiction and form of an action between adverse parties, it is a special proceeding relating to the subject of unlawful practice of law.

It would have been just as well if Mr. Depew had risen in court some morning and had asked leave to file written charges that the credit association was practicing law without license. Leave to file being granted, the court would have caused citation to be issued and served, and would have fixed time to plead. If, after a hearing, the court should find the charges to be true, an order to desist would follow.

The duty of an attorney to bring such a subject to the attention of the court, and the authority and duty of the court to take cognizance of the subject are undoubted. In this instance, charges were made which the court has entertained. The accused is before the court in response to the charges, and I regard the whole subject of remedy by injunction as unimportant.

Dawson and Harvey, JJ., join in the foregoing special concurrence:

Smith, J. (dissenting): I cannot agree with the opinion of the majority. It is well settled in this state that the proper party to institute an action of this kind is the state on the relation of the county attorney or the attorney-general. (See *Bobbitt v. State Highway Comm.*, 138 Kan. 487, 26 P. 2d 1115, and cases cited.)

This action was not brought under the theory spoken of in the specially concurring opinion. It was clearly brought by the plaintiffs to obtain relief from a situation that was proving costly to them in their practice. The allegations of the petition show that.

The argument that some procedure like this must be approved in order to meet a bad condition does not appeal to me. No reason appears why the action could not have been brought in the name of the state. Similar actions are often brought. (See *State, ex rel., v. Perkins*, 138 Kan. 899, 28 Pac. 765.)

If this action can be maintained by the plaintiffs under the theory spoken of in the specially concurring opinion, then any lawyer who is displeased with the conduct of one of his brothers at the bar may bring an action against him in the district court. Such

a situation would be contrary to the spirit of R. S. 7-101 and 7-121, which confer on the supreme court the authority to admit attorneys to the bar and to disbar attorneys when their misconduct is brought to its attention. R. S. 7-112 and 7-113 provide the procedure by which misconduct of attorneys shall be brought to the attention of the supreme court. My view of the matter is that a question such as is presented in this case should be litigated in the regular way, that is, in an action brought in the name of the state, on the relation of the county attorney or attorney-general.